605 So.2d 226 (1992)
B. Joe TILLEY, et ux., Plaintiffs-Appellants,
v.
Donald E. KENNEDY, Jr., et al., Defendants-Appellees.
No. 23,958-CA.
Court of Appeal of Louisiana, Second Circuit.
September 23, 1992.
*227 William H. Ledbetter, Jr., Bossier City, for appellants.
Mayer, Smith & Roberts by Kim Purdy, Shreveport, for defendant, Roach Paint Co., Inc.
Before MARVIN, NORRIS and BROWN, JJ.
BROWN, Judge.
Plaintiffs appeal the decision of the trial court sustaining an exception of prescription and dismissing their action against a manufacturer of defective sheetrock "mud." We affirm in part, reverse in part, and remand.

FACTS
Plaintiffs, Joe Tilley and his wife Joyce, purchased a newly constructed home built by Donald Kennedy in January of 1983. Six to ten months after moving in, the Tilleys began to notice dark discolored areas on the painted sheetrocked walls in the home. By late 1983 or early 1984, the Tilleys employed a painting contractor, T.W. Rascoe, to inspect their home and ascertain the cause of the problem. Rascoe diagnosed the discoloration as defective sheetrock "mud," which is used to fill in seams and holes. Rascoe informed the Tilleys that they would have to tear out the sheetrock and replace it to solve the problem.
The Tilleys attempted to negotiate with Kennedy, who was also their neighbor and friend, to correct the problem. The Tilleys claim to have made unsuccessful demands upon Kennedy to fix the sheetrock both before Rascoe's opinion and thereafter for several years.
On April 8, 1987 the Tilleys sent a demand letter to Roach Paint Company, who they had just learned was the manufacturer and supplier of the mud. On June 9, 1987, a representative of Roach visited the Tilleys, advised them that the discoloration was mildew, and suggested that applying Clorox to the walls would solve the problem. The Tilleys attempted to do just that, but the application of Clorox was unsuccessful.
In January of 1988, Mr. Tilley developed respiratory problems, which he claims were caused by the mildew resulting from the defective mud. On March 23, 1988, the Tilleys filed suit against Kennedy and Roach seeking damages for the repair of their home and for personal injuries. On February 14, 1989, Kennedy was discharged from the suit after filing for bankruptcy. On January 31, 1991, Roach's insurance company, Providence Lloyds, was added as an additional defendant.
Roach and its insurer then filed an exception of prescription, alleging that the claim had prescribed one year from January 1984, the estimated date of Rascoe's opinion. The trial court sustained the exception and dismissed the suit. In its written opinion, however, the trial court stated that the Tilleys were not aware until 1988 that the defective mud was causing the respiratory health problems. After entertaining a motion for re-argument and reconsideration, the trial court once again sustained the exception. This appeal followed.

*228 DISCUSSION
Delictual actions are subject to a liberative prescription of one year. LSA-C.C. Art. 3492. When damage is caused to immovable property, the one-year prescription commences to run from the day the owner of the immovable property acquired, or should have acquired, knowledge of the damage. LSA-C.C. Art. 3493. A claim by a homeowner against a manufacturer of defective sheetrock mud used by a contractor is subject to the one-year prescriptive period of Art. 3493. Noggarath v. Fisher, 557 So.2d 1036 (La.App. 4th Cir.1990).
The supreme court recently restated that prescription will not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not "willful, negligent or unreasonable." In re Medical Review Panel of Lucinda A. Howard, 573 So.2d 472 (La. 1991).
When a party has enough notice to excite attention, put him on guard, and call for inquiry, he has sufficient knowledge to start the running of prescription. Cartwright v. Chrysler Corporation, 255 La. 597, 232 So.2d 285 (La.1970); Camaille v. Martzell, 579 So.2d 1023 (La.App. 5th Cir. 1991), writ denied, 586 So.2d 537 (La.1991).
In Jordan v. Employee Transfer Corporation, 509 So.2d 420 (La.1987), the supreme court further delineated the rules regulating the running of prescription:
Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused the damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
When prescription begins to run depends on the reasonableness of a plaintiff's action or inaction.
See also Roberts v. Murphy Oil Corporation, 577 So.2d 308 (La.App. 4th Cir.1991), writs denied, 580 So.2d 670, 673 (La.1991).
The Tilleys' petition asserts claims for damages to their home and for damages due to medical problems allegedly caused by the defective mud.
In accordance with the reasoning in Jordan v. Employee Transfer, supra, we hold that under the circumstances of this case the Tilleys were required to seek out those they believed might be responsible for their property damages, and that prescription on their property damages began to run in 1984. In late 1983 or early 1984, Rascoe, the Tilleys' paint contractor, informed them that the problem was caused by the sheetrock mud. Therefore, we affirm the trial court's sustaining of the exception of prescription as to the property damages. The fact that the homebuyers were negotiating with Kennedy has no bearing on their claim against Roach, nor can it support the argument that they were reasonable in waiting until 1987 to seek out the manufacturer of the defective product.
However, in accordance with Howard, supra, we hold the trial court erred in sustaining the exception of prescription regarding Mr. Tilley's respiratory problems. The evidence did not show the Tilleys knew or should have known that the discoloration was mildew, and thus might be linked to the respiratory problems until June of 1987. Further, Mr. Tilley did not learn of his medical problems until January 1988. The lawsuit on this medical issue was filed in March of 1988 and had not prescribed. The appropriate prescriptive period as provided by LSA-C.C. Art. 3492 is subject to the doctrine of contra non valentem. This legal principle provides that prescription does not run against a person unable to bring an action. Since one is not bound to do the impossible, a party excusably ignorant of a claim is not barred by prescription. Plaquemines Parish Commission Council v. Delta Development Company, Inc., 502 So.2d 1034 (La.1987); Carbonnier, 5 Revue Trimestrielle de Droit Civil (1968) in J. Mayda, 5 Civil Law Translations 465 (1972).

*229 CONCLUSION
For the foregoing reasons, we reverse the trial court's judgment with respect to the plaintiffs' claims for damages associated with alleged medical problems. The trial court's judgment with respect to property damages is affirmed. Costs shall be equally divided between appellants and appellees; the case is remanded to the trial court.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.